**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
HATTIESBURG DIVISION**

WILLIAM ELWOOD                                                              PLAINTIFF

VERSUS                                                CIVIL ACTION NO. 2:06cv91-DCB-RHW

COBRA COLLECTION AGENCY                                                     DEFENDANT

## OPINION AND ORDER

This matter comes before the Court on the defendant's Motion for Summary Judgment [**docket entry no. 37**]. Having carefully considered the Motion, memorandum, applicable statutory and case law, and being otherwise fully advised as to the premises, the Court finds as orders as follows:

### I. FACTS AND PROCEDURAL HISTORY

At all relevant times, the plaintiff William Elwood ("Elwood") was the sole owner of White Spot Grocery, a business located in Seale, Alabama. White Spot Grocery had a business agreement to buy gasoline from Whatley Oil & Auto Parts, Inc. ("Whatley Oil"). White Spot Grocery would then re-sell the gasoline to its customers. As part of the business arrangement between Whatley Oil and White Spot Grocery, the plaintiff personally guaranteed payment of the gasoline charges incurred by White Spot Grocery.

Following the failure of White Spot Grocery to tender adequate payment for several orders of gasoline, Whatley Oil retained the defendant Cobra Collection Agency ("Cobra") to collect the

delinquent charges. Cobra directed a substantial portion of its collection efforts toward the plaintiff, the personal guarantor of the debts it had been hired to collect.

On April 7, 2006, the plaintiff, a Mississippi domiciliary, filed a complaint with this Court against the defendant, a Georgia corporation with its principal place of business in Columbus, Georgia. (Compl. 1.) In his complaint, Elwood asserts claims arising under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681u (2006), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o (2006), based upon Cobra's alleged violations of those Acts. Specifically, the plaintiff contends that the defendant, during the course of its debt collection efforts, misled him as to the amounts which he owed to Whatley Oil. (Compl. ¶ 4.) Elwood asserts that the defendant wrongfully threatened to have arrest warrants issued for his employees at White Spot Grocery should he fail to accede to its demands for payment. (Compl. ¶ 4.) The plaintiff also avers that the defendant failed to send him written notice of the debts upon a demand for validation made by his attorney. (Compl. ¶ 6.) By way of relief, Elwood seeks a judgment against the defendant for $100,000.00 plus interest in actual and compensatory damages, an indeterminate amount of punitive damages, costs, and attorneys fees. (Compl. 3.)

On December 15, 2006, the plaintiff filed his first Motion for

2

Leave to File Amended Complaint [docket entry no. 23], wherein he sought to add a claim for fraudulent inducement.  The Court gave the plaintiff leave to add this claim by its written Order [docket entry no. 26] dated January 5, 2007.  After several months of discovery, Elwood filed his second Motion for Leave to File Amended Complaint [docket entry no. 34], wherein he sought to add a claim for infliction of emotional distress.  The Court granted this motion by text order on May 9, 2007.  As of the date of this Opinion and Order, the plaintiff has not yet filed an amended complaint which includes the two claims that he sought and was granted leave to add.

On July 3, 2007, the defendant filed its Motion for Summary Judgment [docket entry no. 37].  That Motion is now before the Court.[1]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[1] On July 12, 2007, the plaintiff filed his Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment [docket entry no. 39], which the Court granted by its written Order [docket entry no. 40] dated July 27, 2007. However, to date the plaintiff has completely failed to respond to the defendant's Motion for Summary Judgment.

judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The nonmovant must instead come forward with "specific facts showing that there is a genuine

---

[2] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (internal citations omitted).

issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

## IV. ANALYSIS

In its Motion, Cobra argues that the FDCPA offers no viable cause of action for the plaintiff because it applies only to consumer debts, which are not the type of debts involved in this matter. (Mot. Summ. J. ¶ 1.) The defendant also posits that the plaintiff's claim under the FCRA is equally unavailing because that Act only applies to consumer reporting agencies that provide consumer reports. (Mot. Summ. J. ¶ 1.) Cobra insists that it is not a consumer reporting agency and that no consumer report was involved in this action. (Mot. Summ. J. ¶ 1.) Therefore, the defendant believes that it is entitled to a judgment as a matter of law on the plaintiff's claims under the FDCPA and the FCRA.[3]

*A. Fair Debt Collection Practices Act Claim*

"The Fair Debt Collection Practices Act prohibits 'debt collectors' from making false or misleading representations and

---

[3] The defendant also points out that the plaintiff has failed to file an amended complaint that mentions any claims other than those arising under the FDCPA and FCRA. As noted before, the plaintiff was given leave by this Court to add state-law claims of fraudulent inducement and infliction of emotional distress. Cobra asserts that the plaintiff has waived any chance he had to amend the complaint or that he now should be estopped from doing so.

5

from engaging in various abusive and unfair practices." <u>Heintz v. Jenkins</u>, 514 U.S. 291, 292 (1995). The Act defines a "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Cobra doubtless qualifies as a debt collector under the FDCPA, given that its central business function is to collect debts due or owed to others.

"For the FDCPA to apply, the obligation at issue must qualify as a 'debt,' defined as 'any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.'" <u>Hamilton v. United Healthcare of La., Inc.</u>, 310 F.3d 385, 388 (5th Cir. 2002)(quoting 15 U.S.C. § 1692a(5)). Thus the Act "limits 'debt' to consumer debt," insofar as it only applies to debts "'arising out of . . . transactions' that 'are primarily for personal, family, or household purposes.'" <u>Heintz</u>, 514 U.S. at 293 (quoting 15 U.S.C. § 1692a(5)).

The Court is of the opinion that the evidence put forward by the defendant demonstrates that the debts Cobra was retained by Whatley Oil to collect were not consumer debts as contemplated by

the FDCPA. First, the affidavit of Cobra's chief executive officer Janice Ledden indicates that the debts at issue were not consumer debts because they were incurred in the sale of gasoline to White Spot Grocery which was to be later used for commercial resale. (Ledden Aff. ¶¶ 3, 7.)

Second, the plaintiff stated the following in his deposition:

> Q: Now, what were you entering into an agreement with Whatley Oil for in regards to this document; do you recall?
> A: To purchase gasoline for the store.
> Q: The gasoline that was being purchased per this document, was being used as – being sold through the store; do I understand it correctly?
> A: That is correct.
> Q: So it was being used through the commercial activity of the store; is that correct?
> A: Correct.
>
> .   .   .
>
> Q: And it's also my understanding that the charges that you referred to, the $13,000 figure, would have been coded as purchases for gasoline from Whatley Oil; am I understanding that correctly?
> A: That is correct.
> Q: And those purchases would have been used for White Spot Supermarket under that business card, correct?
> A: Correct.
> Q: And that would have been commercial use, if I'm not mistaken, correct?
> A: Yes.
> Q: In other words, you weren't using it for your own personal or household use; is that correct?
> A: No. It was being resold.
> Q: On the NSF check we've previously marked what proposes to be a representation of that as exhibit number three, understanding we may have to get the exact check. But that check

>was being paid for gasoline or was being
>tendered for gasoline for Whatley Oil before
>it was returned NSF; is that correct?
>A: Correct.
>Q: You were not or White Spot Supermarket was
>not tendering that as a personal check on your
>behalf for any household or personal use, was
>it?
>A: No, it was not.

(Elwood Depo. 22, 52-53.)  Moreover, Elwood indicated that the account under which the gasoline was purchased was a business account and that credit card which was used to purchase the gasoline was a business credit card.  (Elwood Depo. 44, 51.)

Based upon this uncontroverted evidence, it is clear that the debts at issue arose out of a transaction for the purchase of gasoline that was to be resold to the customers of White Spot Grocery.  Such an anticipated commercial use of the gasoline shows that it was not bought from Whatley Oil for personal, family, or household purposes; therefore, the debts do not qualify as consumer debts.  Accordingly, the defendant's attempts to collect the debts on behalf of Whatley Oil do not implicate the provisions of the FDCPA, and Cobra is entitled to a judgment as a matter of law on the plaintiff's claim founded upon the Act.

### B. Fair Credit Reporting Act Claim

The stated purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the

8

consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ."  15 U.S.C. § 1681(b); <u>Morris v. Equifax Info. Servs., LLC</u>, 457 F.3d 460, 465 (5th Cir. 2006).  A "consumer reporting agency" is

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).  A "consumer report" means

> any written, oral, or other communication of information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for –
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1)(A-C).

The Court does not believe that Cobra can be considered a consumer reporting agency as contemplated by the FCRA, chiefly because the plaintiff has not come forth with any evidence which indicates that the defendant regularly assembles or evaluates consumer information for the purpose of furnishing consumer reports

to third parties.  Therefore, because Cobra has not been shown to be aa consumer reporting agency under the FCRA, the defendant's actions in this matter do not fall within the purview of the Act. Accordingly, the defendant is entitled to a judgment as a matter of law on Elwood's FCRA claim.

### *C. Miscellaneous Matters*

The Court having ruled on both of the plaintiff's federal claims, the issue remains whether any state law claims exist over which the Court has diversity jurisdiction.  The Court is aware that to date, as pointed out by the defendant, no amended complaint has been filed by the plaintiff which pleads state law claims for fraudulent inducement or infliction of emotional distress, even though leave was given to the plaintiff to add these claims to his complaint.  Therefore, the plaintiff will be ordered to show cause to the Court why this action should not now be dismissed, given the absence of any remaining claims pled in his complaint.

### V. CONCLUSION AND ORDER

Pursuant to the foregoing analysis,

**IT IS HEREBY ORDERED** that the defendant's Motion for Summary Judgment [**docket entry no. 37**] is **GRANTED.**

**IT IS FURTHER ORDERED** that the plaintiff shall show cause to this Court within ten (10) days from the date of this Opinion and Order why the action should not be dismissed and a final judgment entered

in favor of the defendant.

**SO ORDERED,** this the   28th  day of November 2007.

                                                   s/ David Bramlette   
                                          UNITED STATES DISTRICT JUDGE